## ROBERTSON et al. v. LEE et al.　(No. 8515.)

(Court of Civil Appeals of Texas. Dallas. April 9, 1921. Rehearing Denied May 14, 1921.)

1. Appeal and error ⟜555—Assignments, based on stricken bill of exceptions, not considered.

Assignments of error, based on bill of exceptions, stricken because filed after expiration of period granted for the filing thereof, will not be considered.

2. Trusts ⟜88—Testimony that purchaser at foreclosure sale purchased one-fifth interest for another held available to prove such other person's interest.

In trespass to try title, defendants, having admitted ownership of property by one of the plaintiffs by virtue of a trustee's deed, could not complain that other plaintiff, alleged to have had a one-fifth interest, was not shown to have deraigned title separate from coplaintiff, but that such ownership was shown by testimony that coplaintiff in purchase of property at trustee's sale purchased four-fifths for himself and one-fifth for such other plaintiff.

3. Appeal and error ⟜934(1)—Every intendment indulged in support of judgment in absence of conclusions of fact.

The Court of Civil Appeals must indulge every intendment in support of the judgment, where no conclusions of fact have been filed, and must affirm the judgment, ·if the conclusion it embodies can be said to be reasonably derived from the evidence.

Error from District Court, Dallas County; Kenneth Foree, Judge.

Action by W. B. Lee and others against William F. Robertson and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

W. F. Robertson, J. G. Wilson, and Rasbury, Adams, Stennis & Hamee, all of Dallas, for plaintiffs in error.
Burgess, Burgess, Chrestman & Brundidge, of Dallas, for defendants in error.

HAMILTON, J. Defendants in error sued plaintiffs in error in trespass to try title, seeking recovery of title and possession of a parcel of land situated in the city of Dallas. It was alleged that defendants in error,

―――――――――――――――

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

plaintiffs below, owned the land in fee simple; that Lee owned an undivided four-fifths interest and the other parties plaintiffs, who composed the partnership firm of Sanger Bros., owned the other one-fifth interest. Plaintiffs in error, defendants below, demurred to the petition, and answered by plea of not guilty. The case was tried before the court without a jury, and judgment was rendered for defendants in error, from which judgment plaintiffs in error prosecute this appeal by writ of error.

Upon motion of defendants in error this court, on October 23, 1920, struck out all bills of exceptions contained in the record because they were filed after the expiration of the period granted in the order of court overruling the motion for a new trial within which to file them, which was 60 days after expiration of the term; the statute requiring them to be filed within 30 days after adjournment in the absence of an order of court extending the period.

[1] The first five assignments of error in plaintiffs in error's brief are based upon the bills of exceptions so stricken out, and therefore they will not be considered.

The only remaining assignments are the sixth and seventh. They are presented in group in plaintiffs in error's brief, and are as follows:

"(6) The court erred in rendering judgment in said case in favor of the plaintiffs and against the defendants for the land and premises described in plaintiffs' petition, and for the rent and hire of said property for the reason the evidence was insufficient to support a judgment, in this: There was no evidence of the title of the various members of the firm of Sanger Bros., made parties plaintiff in said suit, from whom, where, or how they acquired title to any part of said land in controversy, or that they had any interest in the rents and hire of said property, while plaintiffs' petition alleged that they were the owners of a certain one-fifth interest in said land.

"(7) The court erred in rendering judgment in favor of the parties named as plaintiffs in said petition and against the defendants for the land in controversy and the rents and hire of said land, because said judgment was not supported by the law and the evidence in this: There was no evidence introduced to show that the members of the firm of Sanger Bros., mentioned in said petition, ever acquired any title to any part of said land, and no papers, deeds, or records were introduced that indicated in the remotest way that said firm or any of its members had ever at any time owned, or do now own, or ever acquired title to said land or any part of the same."

These assignments of error are followed by propositions appropriate to them. But under the uncontroverted evidence contained in the record, and there being no findings of fact, we do not think they can be sustained.

On the 3d day of April, 1917, there existed a deed of trust against the property to secure an indebtedness of $4,500. This was a first lien. There also existed a deed of trust evidencing a second lien inferior and subject to the first lien, and which secured nine notes each for $22.50 and a note for $14.60, and also secured the keeping of the provisions of the first lien deed of trust. Both deeds of trust were executed by B. G. Howard and wife, but were made to different trustees. On April 3, 1917, six of the small notes secured by the second lien deed of trust had been paid, but the others had not, and one of them had matured on November 1, 1916, and default in payment thereof had been made. Default in payment of an installment of interest due November 1, 1916, upon the $4,500 note, in payment of certain other demands chargeable against the property, had also been made by the debtors. The beneficiary under the second and inferior deed of trust paid the past-due interest on the $4,500 note, which amounted to $157.50, and also paid certain sums for insurance premiums required by the first lien deed of trust. The second lien deed of trust provided that should the beneficiary thereunder pay any interest payment or other part of the debt secured by the first lien, or pay any tax, insurance, or other demand chargeable against the property, and payable by the debtor under the terms of the first deed of trust, then such sum should at once become due and payable to the beneficiary of the second deed of trust.

The trustees under the second lien deed of trust, in conformity with the provisions of that instrument on April 3, 1917, sold the property for the purpose of paying the $22.50 due November 1, 1916, the $157.50 interest installment due on the same date and the insurance premiums advanced amounting to $80.02. W. B. Lee bought the property at the foreclosure sale, which was subject to the first lien deed of trust and the debt thereby secured. Trustee's deed was executed to Lee.

It appears from Lee's testimony, which is uncontradicted, that he bought at the foreclosure sale to protect inferior notes he held against the place. While the evidence is not clear, Robertson seems to have bought the place some time prior to the execution of the trustee's deed to Lee subject to the debts secured by the two deeds of trust above named, or assuming such debts. On May 15, 1917, Robertson and his wife executed a written contract with Lee, wherein they expressly recognized the validity of the sale to him, and expressly recognized his sole ownership of the premises and wherein they rented the same from him for a period of three months, from April 3, 1917, to July 3, 1917, they then being in possession of the property and having been in possession of it continuously since the date the trustee's deed was executed to Lee, which, as aforesaid, was April 3, 1917. This instrument gave Robertson

and wife an option to purchase the property any time during the three months for $6,839.15, plus interest thereon at 8 per cent. per annum from May 1, 1917, they to pay Lee in cash the difference between the total stipulated price and the outstanding $4,500 indebtedness against the property. They agreed to keep the premises in good repair, and surrender possession to Lee on July 3, 1917, in the event they failed to exercise their option to purchase. The undisputed evidence shows that at the end of the period named in this instrument another of the same import was made for the same period of time after July 3, 1917, which was, when it terminated, succeeded by still another 90-day agreement of the same kind. These two agreements, succeeding and effectually extending the original one, seem to have been made by parol. In 1918 C. O. Middleton came into occupancy of the premises as a tenant. On the 30th day of October in that year a written contract to which Lee, Robertson, and Middleton were parties was executed, in which Lee was again expressly recognized as the owner, and in which Robertson was given the right, under certain limitations, to sell the property, and Middleton was recognized as the rightful tenant for a given period of time. On February 3, 1919, Robertson wrote a letter to Lee, in which he mentioned the property as his "house" and his "home," and stated that he and his wife had bought the property more than three years prior to the date of the letter. In this letter he states that the deed has stood in Lee's name since the foreclosure sale in 1917, and refers to an understanding had with Lee in regard to some transaction seemingly connected with default in payments and with the foreclosure. It does not appear therefrom or otherwise what the understanding and transaction were. This letter advised Lee that Robertson had moved into the house, and stated as a reason for it that he desired to protect his interests and prevent a sacrifice sale of the property. This appears to have been the first attempt on Robertson's part to assert any kind of adverse possession or to do any act tending to claim any kind of title subsequent to Lee's purchase.

The record as a whole is to the effect that Lee bought at foreclosure sale to protect notes against the property held by him and rented the property to Robertson, who had some kind of deed antedating the purchase by Lee. The conceded legal title passed into Lee upon the execution of the trustee's deed to him. Robertson recognized and admitted Lee's ownership was superior to his by reason of this deed. So did Mrs. Robertson. The relation of landlord and tenant between Lee and Robertson was established by the rental contract and option to buy, dated May 15, 1917. Robertson was occupying the place as a home when Lee bought, and rested his right of occupancy at that time upon whatever title the deed previously executed to him would support, and, so far as the record reveals, upon no other. After the sale he repeatedly admitted, as above indicated, that his claim of title under the deed he had was inferior to Lee's title, and that Lee owned the property. At the time he took possession in 1919 he asserted no claim of title beyond whatever he might have by virtue of the deed passed to him prior to Lee's purchase, as stated in the letter of February 3, 1919. His reference in that letter to an understanding and transaction with Lee is inadequate to constitute any claim of title growing out of an understanding or transaction. The letter does not deny the superiority of Lee's title. The entirety of its contents is inadequate to support the conclusion that it does. The monthly rentals paid to Lee by Robertson were receipted for with receipts stating that they were given for rent. Considering the record as a whole, there stands forth from it the clear fact that Lee had an agreement with Robertson that the latter might repurchase from Lee the title which the foreclosure put into him, and that such agreement continued until shortly before Robertson last moved into the house. It seems then to have become apparent that Robertson would be unable to buy, and Lee was attempting to make sale to others. During the whole of this time Robertson was in the attitude of admitting that the trustee's deed to Lee had destroyed any rightful claim of title by virtue of Robertson's deed, and that Lee owned the property. Plaintiff in error, as the case stands in this court, does not controvert Lee's right of recovery, nor question the superiority of his title.

[2] The facts indicate that, while the whole legal title was conveyed to Lee by the trustee's deed, he took a beneficial interest of one-fifth therein for Sanger Bros., and the other four-fifths for himself. The proof supports the conclusion that this was in accordance with an agreement had with their agent. Lee testified without any objection on plaintiffs in error's part that they owned the one-fifth. This would have established their interest in a suit by them against Lee, setting up a resulting equitable trust in their favor, and no reason occurs to us to preclude the effectualness of it against plaintiffs in error. They had not denied the superiority of the title conveyed to Lee by his deed and the proof is sufficient, it seems, to show that one-fifth of that very title in equity belonged to Sanger Bros. No other means of showing Sanger Bros.' title could have been used and the general requirement that title to land must be established by written conveyance does not apply.

[3] The foregoing, we think, is fairly deducible from the record as established proof. We must indulge every intendment in sup-

port of the judgment, since no conclusions of fact were filed, and affirm the judgment, if the conclusion it embodies can be said to be reasonably derived from the evidence. In view of all the above and foregoing, and under the record presented, we believe plaintiffs in error are not in a position to complain that Sanger Bros. failed to deraign title separate from Lee.

Believing that under the facts of this case Sanger Bros. were not required to prove separately their chain of title, we will affirm the judgment of the court below.

Affirmed.